UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
JEFFREY SHEPHERD,

                    Plaintiff,

                                                MEMORANDUM & ORDER
        -against-                               19-CV-1980(JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------X
APPEARANCES
For Plaintiff:      Daniel Adam Osborn, Esq.
                    Osborn Law
                    43 West 43rd Street, Suite 131
                    New York, New York 10036

For Defendant:      Matthew Mailloux, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271a Cadman Plaza East
                    Brooklyn, New York 11201

SEYBERT, District Judge:

        Plaintiff Jeffrey Shepherd ("Plaintiff" or "Shepherd")

brings this action pursuant to Section 205(g) of the Social

Security Act (42 U.S.C. § 405(g)), challenging defendant the

Commissioner of Social Security's (the "Commissioner") denial of

his application for disability insurance benefits.  Before the

Court are Plaintiff's motion for judgment on the pleadings (Pl.

Mot., D.E. 13; Pl. Br., D.E. 13-1; Pl. Reply, D.E. 19), and the

Commissioner's cross-motion for judgment on the pleadings (Comm'r

Mot., D.E. 16; Comm'r Br., D.E. 17).  For the following reasons,

Plaintiff's motion is GRANTED, the Commissioner's cross-motion is

DENIED, and this matter is REMANDED for further proceedings consistent with this opinion.

<u>BACKGROUND</u>[1]

Plaintiff applied for disability insurance benefits on December 11, 2014, alleging disability beginning on April 16, 2014. (R. 94.)  He primarily claimed inability to work due to issues with his knee.  (R. 75.)  After his application was initially denied on February 20, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 11, 2017.  (R. 94; 67-80.)  On July 18, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.  (R. 94-102.)  Plaintiff requested review of the ALJ's decision and the Appeals Council issued a decision finding that Plaintiff became disabled on July 18, 2017 (the date of the ALJ's decision) but not before.[2] The Appeals Council otherwise adopted the ALJ's decision.  (R. 4-13.)  This action followed.  (Compl., D.E. 1.)

---

[1] The background is derived from the administrative record filed by the Commissioner.  (R., D.E. 10.)  For purposes of this Memorandum & Order, familiarity with the administrative record is presumed.  The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

[2] The Appeals Council found that on the date of the hearing, approximately one month before his 55th birthday, Plaintiff was considered to be an individual of "advanced age."  Prior to the hearing date, he was "closely approaching advanced age."  Based on this change in age category, Plaintiff was disabled.  (R. 11, citing 20 C.F.R. § 404.1563.)

As relevant here, the record establishes that Plaintiff is a high school graduate and previously worked as a truck driver, cleaner, forklift operator, and stock clerk. He had a commercial drivers' license but turned it in when his doctor declined to clear him to drive due to his physical ailments. (R. 72-75.) In April 2014, Plaintiff fell and injured his right knee. He visited Long Island Medical Care Services, where a Physician's Assistant ("PA") diagnosed a severe right knee sprain. (R. 292-93.) He followed up at Long Island Medical Care Services one week later and was advised to see an orthopedist as soon as possible. He went to Huntington Hospital for a CT scan, which showed findings of a possible tear. (R. 290-91.)

Plaintiff first saw orthopedic surgeon Dr. Hal Feldman on April 28, 2014. He rated his knee pain as 8/10. Dr. Feldman recommended immediate surgical repair. (R. 419-20.) Dr. Feldman performed surgery the next day and repaired Plaintiff's right patella tendon rupture. (R. 296-98; 421-22.) Dr. Feldman saw Plaintiff for several follow-up appointments in May 2014. He noted that Plaintiff had a residual temporary 100% disability (R. 416-17) and opined Plaintiff was unable to return to work (R. 435).

Plaintiff continued to see Dr. Feldman regularly for several months. By July 2014, Dr. Feldman noted a residual disability at 50% and in August 2014, opined that Plaintiff was able to perform part-time sedentary work activities. (R. 410-11.)

3

Dr. Feldman found the same in November 2014 (R. 407) and December 2014 (R. 405).  In February 2015, Dr. Feldman saw Plaintiff twice and again opined that he had a 50% residual disability and could perform sedentary work.  (R. 430-32.)  In March 2017, he recommended physical therapy, which Plaintiff engaged in over several months.  (R. 31-45.)

In January 2015, in connection with his application for disability benefits, consultative examiner Dr. Andrea Pollack examined Plaintiff.  (R. 427-29.)  Upon examination, she opined that he had a "moderate" restriction in walking, standing, climbing stairs, and kneeling, and should avoid heavy lifting, carrying, and heavy exertion.  (R. 429.)  In May 2017, at the request of the ALJ, orthopedic surgeon Dr. Louis Fuchs reviewed Plaintiff's file (but did not examine Plaintiff).  (R. 466-77.)  Based on the record evidence, he opined that in an eight-hour work day Plaintiff could (1) sit for two hours at one time and eight hours total and (2) walk and stand for one hour without interruption.  (R. 469.)  Dr. Fuchs placed a question mark next to the boxes asking whether Plaintiff could walk and stand for a total of three hours.  (R. 469.)

<u>DISCUSSION</u>

I.   <u>Standard of Review</u>

In reviewing the ruling of an ALJ, the Court does not determine <u>de novo</u> whether a plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different

4

decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).[3]

II.  The ALJ's Decision

Here, the ALJ applied the familiar five-step process (see 20 C.F.R. §§ 404.1520, 416.920) and concluded that Plaintiff was not disabled.  (R. 94-102.)  He found that (1) Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured (R. 96); (2) Plaintiff had the severe impairment of residuals of a right patellar tendon rupture status post-surgical repair (R. 96); (3) but the knee impairment did not meet or equal the severity of any of the impairments listed in the Social Security Act (R. 97); (4) Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with an ability to lift/carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday

_____

[3] The Appeals Council's decision is the Commissioner's final decision in this case subject to this Court's review.  See 20 C.F.R. §§ 404.979, 404.981.  Accordingly, the Court addresses the issues raised by Plaintiff with the ALJ's decision as adopted by the Appeals Council.  Plaintiff does not dispute the Appeals Council's conclusion regarding his age category.

with normal breaks, and occasionally balance, stoop, kneel, crouch, crawl, and to occasionally climb ladders, ropes, scaffolds, ramps and stairs (R. 97); and (5) although Plaintiff could not perform his past relevant work, there were jobs that existed during the relevant period that Plaintiff could perform (R. 100-01).

III. <u>Analysis</u>

Plaintiff contends that (1) the ALJ did not follow the treating physician rule and (2) the ALJ's RFC determination is not supported by substantial evidence. (Pl. Br. at 12-15.) The Commissioner responds that (1) the ALJ properly weighed the opinion evidence and (2) the RFC finding was properly based on a review of the totality of record evidence. (Comm'r Br. at 17-29.)

A.   <u>The ALJ Violated the Treating Physician Rule</u>

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). The regulations state:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your

6

> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).[4]  Thus, "when a treating physician's opinions are repudiated, the ALJ must comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Bracco v. Comm'r of Soc. Sec., No. 13-CV-2637, 2015 WL 1475862, at *14 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks and citation omitted; alteration in original).  "By the same token, the opinion of a consultative physician, who only examined a Plaintiff once, should not be accorded the same weight as the opinion of a Plaintiff's treating physician." Id. (internal quotation marks and citation omitted).

When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors:  "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is

---

[4] "While the Act was amended effective March 27, 2017 [to eliminate the treating physician rule], the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017); see also 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.  For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

7

supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008) (citations omitted). The ALJ must also set forth "'good reasons' for not crediting the opinion of a plaintiff's treating physician." Id. (citations omitted).

Here, despite Dr. Feldman's extensive treatment history of Plaintiff, the ALJ assigned his opinions "limited weight" (1) because "opinions that a claimant is 'disabled' are reserved to the Commissioner" and (2) because "Dr. Feldman's opinions that [Plaintiff] had 50% or 100% disability, or could perform sedentary work activities, were vague and conclusory, without any description of specific functional limitations." (R. 100.) As to the ALJ's first reason, although decisions regarding disability are ultimately left to the Commissioner (see 20 C.F.R. § 404.1527(d)),

> [r]eserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even--and perhaps especially--when those dispositions are unfavorable.

Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009) (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)) (ellipsis in

original).   Thus, merely stating that it is the Commissioner's province to make ultimate disability determinations, and not Dr. Feldman's, does not fulfill the ALJ's obligation to explain why Dr. Feldman's opinions were discredited.

Additionally, the ALJ summarily gave (1) "good weight" to the opinions of one-time consultative examiner Dr. Pollack "because she personally examined [Plaintiff], and her opinion was consistent with the results of a complete examination" and (2) "great weight" to non-examining consultant Dr. Fuchs because he "is a specialist in orthopedic surgery, and made a thorough review of the entire file." (R. 100.) But notably, Dr. Feldman personally examined [Plaintiff] multiple times, is an orthopedic surgeon, and his treatment notes made up much of the file, and in contrast, the ALJ still accorded his opinions limited weight. Yet he gave great weight to the opinion of Dr. Fuchs, who merely reviewed the file, and left a question mark next to two of the evaluative boxes on the medical source statement he filled out. (R. 469.) "The ALJ's perfunctory explanation for his reliance on the consulting physicians' opinions, and his rejection of the treating physician['s] evaluations, cannot withstand judicial scrutiny." Bracco, 2015 WL 1475862, at *17 (citing Smollins v. Astrue, No. 11-CV-0424, 2011 WL 3857123, at *10 (E.D.N.Y. Sept. 1, 2011)).

The ALJ also found that Dr. Feldman's opinions were

"vague and conclusory" as they did not describe "any specific functional limitations." (R. 100.) Because the ALJ has a duty to fill gaps in the record, "if a physician's report is believed to be insufficiently explained [or] lacking in support . . . the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion." Bracco, 2015 WL 1475862, at *14 (E.D.N.Y. Mar. 31, 2015) (quoting Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010)). Here, "to the extent the ALJ believed that Dr. [Feldman's] opinion was deficient for not opining on Plaintiff's ability to perform work-related activities [or describing specific functional limitations], he was required to seek additional evidence or clarification from the medical source." Id. at 16 (internal quotation marks and citations omitted).

    Because the ALJ did not afford Dr. Feldman's opinion controlling weight and failed to articulate good reasons for doing so, the ALJ violated the treating physician rule. Accordingly, the matter is REMANDED for further proceedings consistent with this opinion. See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion."). Additionally, because the Court finds that violation of the treating physician rule requires remand, it need not consider Plaintiff's arguments regarding the ALJ's RFC

10

finding.

CONCLUSION

For the foregoing reasons, the Plaintiff's motion (D.E. 13) is GRANTED and the Commissioner's cross-motion (D.E. 16) is DENIED.  This matter is REMANDED for proceedings consistent with this Memorandum and Order.  The Clerk of the Court is directed to terminate all pending motions and mark this case CLOSED.


SO ORDERED


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated: October   29  , 2020
       Central Islip, New York